UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Petitioner,<br><br>vs.<br><br>MUNA AHMED<br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) | MISC. NO. 06-029ML |

PETITION TO ENFORCE TOXIC SUBSTANCES CONTROL ACT SUBPOENA

The United States of America, by Robert Clark Corrente, United States Attorney for the District of Rhode Island, petitions this court for an order directing Respondent, Muna Ahmed, to produce written responses and documents as set forth in the Toxic Substances Control Act ("TSCA") subpoena duces tecum served upon her. In support, petitioner alleges as follows:

I. Jurisdiction and Venue

1. This court has subject matter jurisdiction pursuant to Section 11(c) of the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. App. § 2610(c), 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

II. Parties

3. Petitioner is the United States of America for the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), an agency of the United States of America.

4. Upon information and belief, Respondent Muna Ahmed is an individual who resides in Providence, Rhode Island. Ms. Ahmed

owns or has owned and manages or has managed residential rental properties at the following addresses in Providence, Rhode Island: 38 Maple Street, 42 Maple Street and 47 Maple Street.

5. Upon information and belief, Ms. Ahmed purchased the properties referenced in Paragraph 4 on December 30, 2003. Between January 2002 and December 2003 she managed the properties on behalf of the previous owners, her brother, Saif Abdulkarim, and nephew, Rayed Abdulkarim. Ms. Ahmed's husband, Malek Ahmed, managed the properties from approximately 1995 until his death in January 2002.

III. Legal Basis

6. U.S. EPA is charged in Section 11 of TSCA, 15 U.S.C. § 2601, with carrying out the provisions of TSCA, 15 U.S.C. §§ 2601 et seq.

7. U.S. EPA is authorized to issue administrative subpoenas for the purpose of "carrying out" the provisions of TSCA, pursuant to Section 11(c) of TSCA, as amended, 15 U.S.C. App. § 2610(c), which provides in relevant part that:

> In carrying out this chapter, the Administrator may subpoena, require the attendance, and testimony of witnesses, and the production of reports, papers, documents, answers to questions, and other information that the Administrator deems necessary. . .

8. Among the TSCA provisions U.S. EPA is charged with carrying out are the civil and criminal enforcement provisions contained in 15 U.S.C. §§ 2615 and 2614. As they relate to the

instant proceedings, those provisions make it unlawful for anyone to violate Subchapter IV - Lead Exposure Reduction, 15 U.S.C. § 2689.

9. Failure or refusal to comply with Subchapter I - Residential Lead-Based Paint Hazard Reduction Act of 1992, set forth at 42 U.S.C. § 4852d, is a prohibited act of 15 U.S.C. § 2689.

10. Failure to comply with the Real Estate Notification and Disclosure Rule ("Lead Disclosure Rule"), which was promulgated pursuant to Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, and is codified at 40 C.F.R. Part 745, Subpart F, is also a prohibited act of 15 U.S.C. § 2689. Those regulations require the disclosure of known information on lead-based paint and/or lead-based paint hazards before the sale or lease of most housing built before 1978.

## IV. Factual Allegations[1]

11. U.S. EPA received information from the Rhode Island Department of Health ("RIDOH") indicating that several lead poisoned children lived in apartments owned by Ms. Ahmed between 1999 and 2003.

12. Between February 2000 and July 2004, the RIDOH issued

[1]See Affidavit of U.S. EPA Paralegal Specialist Jeffrey C. Norcross attached hereto and made a part hereof.

Notices of Violation and Orders to Abate lead hazards at two properties owned by Ms. Ahmed. Ms. Ahmed failed to comply with the Orders to Abate issued by RIDOH in a timely manner.

13. On November 8, 2004, EPA conducted an inspection to evaluate Ms. Ahmed's compliance with the Lead Disclosure Rule. Ms. Ahmed and her attorney, Kevin McBurney, were present during the inspection.

14. Ms. Ahmed and Mr. McBurney were not able to produce information or documents necessary to evaluate compliance with the Lead Disclosure Rule during the inspection.

15. On January 25, 2005, U.S. EPA issued the instant subpoena (attached hereto) for purposes of carrying out TSCA, within the meaning of 15 U.S.C. § 2610(c). On February 16, 2005, U.S. EPA granted Ms. Ahmed an extension until March 4, 2005 for submitting a response to the subpoena.

16. The documents requested in the subpoena are necessary to determine whether the Respondents complied with the Lead Disclosure Rule.

17. On or about March 1, 2005, Mr. McBurney hand-delivered an initial response to U.S. EPA's subpoena. The initial response was deficient in many respects, most significantly: (1) it did not include copies of leases and rental records for all tenants who moved into the apartments owned or managed by Ms. Ahmed between October 1, 2002 and January 21, 2005, or, in the absence of

written records, a list of tenants who moved into the apartments between those dates; (2) it did not state whether any children (ages 0 through 18) lived in the apartments between October 1, 2002 and January 21, 2005, and, if so, identify which apartments were occupied by children and state the ages of the children at the time leases were entered into; (3) it did not include copies of documents pertaining to lead-based paint and/or lead-based paint hazards in the properties owned and/or managed by Ms. Ahmed; and (4) it did not include documents or information demonstrating compliance with the Lead Disclosure Rule between October 1, 2002 and January 21, 2005.

18. On or about March 9, 2005, U.S. EPA granted Mr. McBurney's request for an extension until April 1, 2005, to provide additional information responsive to the subpoena.

19. On April 1, 2005, Mr. McBurney hand-delivered a box of documents purported to be responsive to U.S. EPA's subpoena. Almost none of the documents delivered by Mr. McBurney was responsive to the subpoena. The few that were responsive had already been provided to U.S. EPA on March 1, 2005.

20. On August 1, 2005, U.S. EPA sent a letter by certified mail, return receipt requested to Mr. McBurney at 83 Power Street, Pawtucket, Rhode Island, demanding that Ms. Ahmed provide a complete response to the subpoena and requesting documents and information related to the tenancy of a number of individuals who

appear to have occupied the properties owned and/or managed by Ms. Ahmed between October 1, 2002 and January 21, 2005. The letter stated that U.S. EPA would take steps to enforce its subpoena in federal court if it did not receive a response by August 19, 2005. The August 1, 2005 letter was returned to U.S. EPA by a former legal associate of Mr. McBurney who indicated that Mr. McBurney's mail should be directed to 42 Maple Street, Providence, Rhode Island.

21. U.S. EPA re-sent the August 1, 2005 letter to Mr. McBurney by certified mail, return receipt requested on August 25, 2005. U.S. EPA sent the letter to Mr. McBurney's attention at 42 Maple Street and 38 Maple Street, Providence, Rhode Island. Both letters were "unclaimed" and returned to U.S. EPA on or about September 10, 2005.

22. U.S. EPA made a third attempt to mail the August 1, 2005 letter to Mr. McBurney on September 15, 2005. On this occasion, U.S. EPA sent the letter via Federal Express to 38 Maple Street, Providence, Rhode Island. The letter was returned to U.S. EPA on September 29, 2005.

23. U.S. EPA made a fourth attempt to mail the August 1, 2005 letter to Mr. McBurney and Ms. Ahmed on October 4, 2005. Again, U.S. EPA sent the letter via Federal Express to 38 Maple Street, Providence, Rhode Island. U.S. EPA demanded that Ms. Ahmed provide the documents and information requested in U.S.

EPA's subpoena as discussed in the August 1, 2005 letter by October 17, 2005.

24. On October 5, 2005, Mr. McBurney contacted U.S. EPA and stated that he received the Federal Express package sent by U.S. EPA on October 4, 2005. U.S. EPA did not receive the documents and information it requested by October 17, 2005. On October 20, 2005, Deborah Brown of U.S. EPA called Mr. McBurney and left a message asking him to return the call.

25. On October 28, 2005, U.S. EPA sent a final letter to Mr. McBurney demanding that Ms. Ahmed provide the documents and information requested in U.S. EPA's subpoena, as discussed in the August 1, 2005 letter, by November 7, 2005. The letter stated that U.S. EPA would take steps to enforce the subpoena in federal court if it did not receive a response by November 7, 2005.

26. To date, Ms. Ahmed has not complied with the subpoena.

27. The documents and information sought are relevant and material to the successful completion of U.S. EPA's investigation of Ms. Ahmed because they will allow U.S. EPA to evaluate whether violations of applicable laws, regulations and TSCA requirements have occurred.

WHEREFORE, petitioner requests this court to order Ms. Ahmed to produce all information, documents and materials described in the subpoena, before a duly authorized designee of petitioner at

a time, date and place specified by the court.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Michael P. Iannotti

MICHAEL P. IANNOTTI
Assistant U.S. Attorney

Of counsel:
Andrea Simpson
Senior Enforcement Counsel
U.S. EPA, Region 1
1 Congress Street, Suite 1100
Boston, MA 02114-2023

AFFIDAVIT OF JEFFREY C. NORCROSS

I, Jeffrey C. Norcross, do hereby state:

1. I am employed by the United States Environmental Protection Agency (EPA) as a Paralegal Specialist in the Region 1 Office of Environmental Stewardship in Boston, Massachusetts.

2. In addition to my duties as a Paralegal Specialist, I also serve as a Compliance Inspector in the Office of Environmental Stewardship's Toxics, Pesticides and Federal Programs unit. Specifically, I perform inspections and investigate potential violations of the *Residential Lead-Based Paint Hazard Reduction Act*, codified at 42 U.S.C. § 4852d, and its implementing regulations at 40 C.F.R. § 745, Subpart F ("Lead Disclosure Rule").

3. On behalf of EPA-Region 1, I am responsible for the investigation of potential Lead Disclosure Rule violations regarding Muna Ahmed of Providence, Rhode Island. Ms. Ahmed owns three apartment buildings located at 38, 42 and 47 Maple Street, Providence, Rhode Island. During the course of my investigation I learned that Ms. Ahmed purchased these properties on December 30, 2003. Between January 2002 and December 2003 she managed the properties on behalf of the previous owners, her brother, Saif Abdulkarim, and nephew, Rayed Abdulkarim. Ms. Ahmed's husband, Malek Ahmed, managed the properties from approximately 1995 until his death in January 2002.

4. On or about April 6, 2004, I received information from the Rhode Island Department of Health ("RIDOH") indicating that several lead poisoned children lived in apartments owned

by Ms. Ahmed between 1999 and 2003.

5. I learned that the RIDOH issued various notices and orders to abate lead hazards at 38 and 42 Maple Street, Providence, Rhode Island between February 2000 and July 2004. I was also informed that Ms. Ahmed failed to comply with the notices and orders to abate lead hazards issued by RIDOH in a timely manner.

6. On November 8, 2004, I conducted an inspection to evaluate Ms. Ahmed's compliance with the Lead Disclosure Rule with a fellow EPA employee. Ms. Ahmed and her attorney, Kevin McBurney, were present during the inspection.

7. During the inspection I asked Ms. Ahmed and Mr. McBurney to provide information and documents necessary to evaluate Ms. Ahmed's compliance with the Lead Disclosure Rule. This information included: the names of tenants who moved into Ms. Ahmed's apartments between October 2002 and October 2004; copies of leases or rental records regarding these tenants; copies of Lead Disclosure Rule-related statements or certifications provided to these tenants and copies of records and reports related to lead-based paint and lead-based paint hazards at the properties owned by Ms. Ahmed.

8. During the inspection, Mr. McBurney stated that he had documents that showed that Ms. Ahmed complied with the Lead Disclosure Rule. He stated that he could not locate the documents at the time of the inspection but that he would mail the documents to me.

9. On or about November 13, 2004, I received a letter with attached forms and affidavits purported to demonstrate Ms. Ahmed's compliance with the Lead Disclosure Rule. However, the documents and information provided by Ms. Ahmed and Mr. McBurney during the inspection and included in Mr. McBurney's November 13, 2004 letter were not sufficient to fully

evaluate Ms. Ahmed's compliance with the Lead Disclosure Rule.

10. In January 2005, I prepared a subpoena pursuant to Section 11 of the Toxic Substances Control Act requesting documents and information necessary to evaluate Ms. Ahmed's compliance with the Lead Disclosure Rule. I sent the subpoena to Ms. Ahmed by certified mail on January 25, 2005. The Domestic Return Receipt card indicated that Ms. Ahmed received the subpoena on January 27, 2005.

11. On February 16, 2005, I sent a letter to Mr. McBurney granting Ms. Ahmed an extension until March 4, 2005, for submitting a response to the subpoena.

12. On or about March 1, 2005, Mr. McBurney hand-delivered to me an initial response to the subpoena. The initial response was deficient in many respects, most significantly: (1) it did not include copies of leases and rental records for all tenants who moved into the apartments owned or managed by Ms. Ahmed between October 1, 2002 and January 21, 2005, or, in the absence of written records, a list of tenants who moved into the apartments between those dates; (2) it did not state whether any children (ages 0 through 18) lived in the apartments between October 1, 2002 and January 21, 2005, and, if so, identify which apartments were occupied by children and state the ages of the children at the time leases were entered into; (3) it did not include copies of documents pertaining to lead-based paint and/or lead-based paint hazards in the properties owned and/or managed by Ms. Ahmed; and (4) it did not include documents or information demonstrating compliance with the Lead Disclosure Rule between October 1, 2002 and January 21, 2005.

13. Andrea Simpson, Senior Enforcement Counsel, U.S. EPA-Region 1 and I met briefly with Mr. McBurney on or about March 1, 2005, to discuss EPA's subpoena and the documents

delivered to EPA by Mr. McBurney on that date. Ms. Simpson and I reviewed the subpoena with Mr. McBurney and described the information that Ms. Ahmed needed to provide to EPA in order for EPA to evaluate her compliance with the Lead Disclosure Rule. Mr. McBurney stated that Ms. Ahmed would provide additional information responsive to EPA's subpoena.

14. On or about March 9, 2005, I granted Mr. McBurney's request for an extension until April 1, 2005, to provide additional information responsive to the subpoena.

15. On April 1, 2005, Mr. McBurney hand-delivered a box of documents purported to be responsive to EPA's subpoena. The large majority of the documents delivered by Mr. McBurney were not responsive to the subpoena. The documents that were responsive had already been provided to EPA on March 1, 2005.

16. On August 1, 2005, I sent a letter by certified mail, return receipt requested to Mr. McBurney at 83 Power Street, Pawtucket, Rhode Island, demanding that Ms. Ahmed provide a complete response to the subpoena and requesting documents and information related to the tenancy of a number of individuals who appear to have occupied the properties owned and/or managed by Ms. Ahmed between October 1, 2002 and January 21, 2005. The letter stated that EPA would take steps to enforce its subpoena in federal court if it did not receive a response by August 19, 2005. The August 1, 2005 letter was returned to me by a former legal associate of Mr. McBurney who indicated that Mr. McBurney's mail should be directed to 42 Maple Street, Providence, Rhode Island.

17. On August 25, 2005, I attempted to resend the August 1, 2005 letter to Mr. McBurney by certified mail, return receipt requested. I addressed the letter to Mr. McBurney's attention at 42 Maple Street and 38 Maple Street, Providence, Rhode Island. Both letters were "unclaimed"

and returned to me on or about September 10, 2005.

18. On September 15, 2005, I made a third attempt to mail the August 1, 2005 letter to Mr. McBurney. On this occassion, I sent the letter via Federal Express to 38 Maple Street, Providence, Rhode Island. The letter was returned to me on September 29, 2005.

19. On October 4, 2005, I made a fourth attempt to mail the August 1, 2005 letter to Mr. McBurney and Ms. Ahmed. Again, I sent the letter via Federal Express to 38 Maple Street, Providence, Rhode Island. In the letter, I demanded that Ms. Ahmed provide the documents and information requested in EPA's subpoena as discussed in the August 1, 2005 letter by October 17, 2005.

20. On October 5, 2005, Mr. McBurney contacted me by telephone and left a voice-mail message stating that he received the Federal Express package sent by EPA on October 4, 2005. I did not receive the documents and information requested in the subpoena by October 17, 2005.

21. On October 20, 2005, I was present when Deborah Brown, Chief of the Toxics Pesticides and Federal Programs Unit, attempted to call Mr. McBurney. Ms. Brown left a message asking Mr. McBurney to return her call.

22. On October 28, 2005, EPA sent a final letter to Mr. McBurney demanding that Ms. Ahmed provide the documents and information requested in EPA's subpoena as discussed in the August 1, 2005 letter, by November 7, 2005. The letter stated that EPA would take steps to enforce the subpoena in federal court if it did not receive a response by November 7, 2005.

23. To date, Ms. Ahmed has not provided the documents and information responsive to EPA's subpoena.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April __3__, 2006

Jeffrey C. Norcross
Paralegal Specialist
U.S. Environmental Protection Agency - Region 1
One Congress Street
Suite 1100, Mail Code: SEL
Boston, MA 02114
(617) 918-1839

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 1
1 CONGRESS STREET, SUITE 1100
BOSTON, MASSACHUSETTS 02114-2023

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**TSCA SUBPOENA NO.: TSCA-01-2005-004**

Ms. Muna Ahmed
38 Maple Street
Providence, Rhode Island 02903

**RE: SUBPOENA under Section 1018 of Title X (the Real Estate Notification and Disclosure Rule)**

This subpoena is issued to you under the authority of Section 11(c) of the Toxic Substance Control Act ("TSCA," "the Act" ), codified at 15 U.S.C. § 2610(c). The United States Environmental Protection Agency ("EPA") and the United States Department of Housing and Urban Development ("HUD") are required by Congress under Section 1018 of Title X, 42 U.S.C. § 4852d, to jointly enforce the Real Estate Notification and Disclosure Rule ( "Disclosure Rule"). Pursuant to Section 1018(b)(5) of Title X, EPA derives its compliance and enforcement authority from TSCA Section 409, 15 U.S.C. § 2689. In carrying out its duties under TSCA, the EPA is authorized under Section 11(c) of TSCA to require by subpoena the attendance and testimony of witnesses, the production of reports, papers and documents, answers to questions, and other information the EPA deems necessary. **Your failure or refusal to fully and truthfully submit the information required by this subpoena may subject you to further action to enforce this subpoena in federal court. In addition, the failure or refusal to submit the information required in this subpoena may subject you to civil and/or criminal penalties pursuant to Section 16 of TSCA, 15 U.S.C. § 2615.** The issuance of this document does not preclude the issuance of further subpoenas relating to this matter to you or to other parties.

The purpose of the subpoena is to require you to produce records and information to the EPA, in order to evaluate your compliance with disclosure laws concerning lead-based paint upon the sale or lease of residential properties. The records and information you have provided to EPA to date regarding lease transactions at 38 Maple Street, 42 Maple Street and 47 Maple Street, Providence, Rhode Island, are insufficient for EPA to evaluate compliance with the disclosure laws. The laws in question are Section 1018 of Title X of the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, and the implementing regulations at 40 C.F.R. Part 745, Subpart F. **Please note that a violation of the Disclosure Rule is a prohibited act under Section 409 of TSCA, which can result in civil penalties under Section 16 of TSCA of up to $11,000 per violation.**

## I. DEFINITIONS

The following terms shall be defined as specified below. **Please read these definitions carefully to properly comply with the terms of this subpoena.** Unless otherwise defined below, the terms used in this subpoena have the meaning given in Title X of the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, and its implementing regulations at 40 C.F.R. Part 745, Subpart F and 24 C.F.R. Part 35, Subpart 35 A.

"Agent" means any party who enters into a contract with a seller or lessor, including any party who enters into a contract with a representative of the seller or lessor, for the purpose of selling or leasing target housing. This term does not apply to the purchaser but may apply to a purchaser's agent unless the Agent receives all compensation from the purchaser, as specified in 40 C.F.R. § 745.103.

"Document" mean the original or an identical and readable copy thereof, and all nonidentical copies ( whether different from the original by reason of notation made on such copies or otherwise), of any writings or records of any type or description, however created, produced or reproduced.

"Evaluation" means a risk assessment and/or inspection.

"Inspection" means (1) a surface-by-surface investigation to determine the presence of lead-based paint as provided in section 302 (c) of the Lead-Based Paint Poisoning and Prevention Act (42 U.S.C. § 4822), and (2) the provision of a report explaining the results of the investigation.

"Lead-based paint" means paint or other surface coating which contain lead equal to or in excess of 1.0 milligrams per square centimeter or 0.5 percent by weight.

"Lessee" any entity that enters into an agreement to lease, rent or sublease target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian Tribes and non profit organizations.

"Lessor" means any entity that offers target housing for lease, rent, or sublease, including but not limited individual, partnerships, corporations, trusts, government agencies, housing agencies, Indian Tribes, and non profit organizations.

"Purchaser" means an entity that enters into an agreement to purchase an interest in target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian Tribes, and non profit organizations.

"Risk Assessment" means an on-site investigation to determine and report the existence, nature, severity, and location of lead-based paint hazards in residential dwellings, including: information

gathering regarding the age and history of the housing and occupancy by children; visual inspection; limited wipe sampling or other environmental sampling techniques; other activity as may be appropriate; and provision of a report explaining the results of the investigation.

"Seller" means any entity that transfers legal title to target housing, in whole or in part, in return for consideration, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian tribes, and nonprofit organizations. The term seller also includes an entity that transfers its shares in a cooperatively owned project, in return for consideration, and an entity that transfers its interest in a leasehold, in jurisdictions or circumstances where it is legally permissible to separate the fee title from the title to the improvement, in return for consideration.

"Target Housing" means any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than six (6) years of age resides or is expected to reside in such housing), and except any zero (0) bedroom dwelling. For the purpose of the subpoena, "housing constructed before 1978" means housing for which a construction permit was obtained (or if no permit was obtained, housing in which construction was started) before January 1, 1978.

"Occupant" means the lessee and any other person who reside in the Target Housing.

"You" and "Your" means you and any entity or venture in which you maintain an interest and your agents and assigns.

## II. INFORMATION TO BE SUBMITTED TO THE EPA

Please provide the information responsive to items 1.0 to 1.12 below <u>within fourteen days (14) of receipt of this subpoena</u>. Where information necessary for a complete response is neither in your possession nor reasonably available to you, indicate this fact in your response and (1) explain the reasonable efforts you made to obtain such information, and (2) if possible, identify any source that either possesses or is likely to possess such information. Please send all responsive information to:

> Jeff Norcross
> U.S. Environmental Protection Agency - Region 1
> One Congress Street, Suite 1100 (SEL)
> Boston, MA 02114

1.0 For the properties listed below (the "Properties") that you own, manage, or lease, please provide the information requested in items 1.1 to 1.12:

- **38 Maple Street, Providence, Rhode Island**
- **42 Maple Street, Providence, Rhode Island**
- **47 Maple Street, Providence, Rhode Island**

1.1 State whether, to Your knowledge, any children (ages 0-18) resided in the Properties during the period from October 1, 2002 through January 21, 2005 and if so, for each property provide: (1) the ages of the children at the time the lease was entered, (2) the location of the property, and (3) the apartment number.

1.2 State whether any information (i.e., Records, Reports, Inspections and/or Risk Assessments) exists pertaining to lead-based paint and/or lead-based paint hazards in the Properties, and provide copies of such information.

1.3 Copies of any and all new leases, excluding lease renewals, executed at the Properties between October 1, 2002 and January 21, 2005, including, but not limited to, leases for specific periods of time and month-to-month leases.

1.4 If no written lease documents exist, then provide copies of any and all records reflecting rental payments received from Lessees who moved into the Properties between October 1, 2002 and January 21, 2005.

1.5 Copies of any and all "certification and acknowledgment of disclosure" documents executed in accordance with 40 C.F.R. § 745.113 between October 1, 2002 and January 21, 2005 (a copy of this regulation in attached for your reference).

1.6 Copies of any communications received from any state or local agency pertaining to lead-based paint or lead-based paint hazards in the Properties between October 1, 2002 and January 21, 2005.

1.7 Copies of any due diligence or financial records, where the environmental condition of one or more of the Properties was described during or after the potential sale or lease of the property.

1.8 Copies of any documents disclosing to You the presence of lead-based paint or lead-based paint hazards in the Properties when You purchased the Properties in December 2003.

**1.9** Identify any and all Agents involved in the transactions in which You purchased the Properties in December 2003.

**1.10** Identify any and all Agents responsible for completing lease transactions at the Properties on Your behalf between October 1, 2002 and January 21, 2005.

**1.11** Identify any trusts, partnerships, corporations or other owners that hold an ownership interest in the Properties.

**1.12** Identify any other residential properties owned by You and/or any trusts, partnerships or corporations in which You hold an interest.

Pursuant to the regulations set forth at 40 C.F.R Part 2, Subpart B (41 FR 36902), you may choose to assert that part or all of the submitted information is "confidential business information" ("CBI"). Unless such confidential claims are asserted at the time the required information is submitted, the EPA makes this information available to the public upon request without further notice to you. Information that is CBI may be made available to the public only to the extent set forth in the above cited regulations. Any such claim for confidentiality must conform to the requirements set forth with 40 C.F.R. § 2.203(b).

While you may claim that information is CBI, such claims are unlikely to be upheld if they are challenged unless the information meets all four of the following criteria:

1. Your business has taken reasonable measures to protect the confidentiality of the information and intends to continue to take such measures.

2. The information is not, and has not been, reasonably obtainable without your business' consent by other persons (other than government bodies) by use of legitimate means (other than discovery based on showing of special need in a judicial or quasi-judicial proceeding).

3. No statute specifically requires disclosure of the information, and the information is not available elsewhere.

4. Disclosure of the information is likely to cause substantial harm to your business' competitive position.

**Please note the burden of proof is on you to demonstrate that the information satisfies all four criteria.** If any portion of your response(s) to this action contains information which you claim as CBI, you should submit that portion of the response in accordance with the following procedures. The material itself should be conspicuously to indicate that it is claimed TSCA confidential. It should be placed in an envelope addressed to Rose Toscano, U.S. EPA- New

England, Office of Environmental Stewardship (SEP), One Congress Street, Boston, MA 02114. The envelope should be marked "Confidential - To Be Opened by the Addressee Only." The envelope should then be place in a second "outer" envelope also addressed to Rose Toscano, the EPA representative identified above. The outer envelope should not be marked with any indication that it contains confidential information. Any non-confidential documents should be placed in the outer envelope. Alternatively, you may contact Catherine Smith at (617) 918-1777 to determine if it is possible to redact certain information from the documents so that they contain no CBI.

If you have any questions concerning this subpoena, please contact Jeff Norcross at (617) 918-1839 or have your attorney contact Catherine Smith, Senior Enforcement Counsel at (617) 918-1777.

Issued in Boston, Massachusetts the 25TH day of JANUARY, 2005.

Stephen Perkins, Director
Office of Environmental Stewardship
U. S. EPA New England

Attachment

cc: Kevin McBurney, Esq.

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MS. MUNA AHMED
38 MAPLE ST.
PROVIDENCE, RI 02903

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X MUNA Ahmed ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery 1/27/05

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number (*Transfer from service label*) 7001 1140 0000 2590 8789

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-0835

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

KEVIN McBURNEY, ESQ.
38 MAPLE STREET
PROVIDENCE, RI 02903

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X MUNA Ahmed ☐ Agent ☑ Addressee

B. Received by (*Printed Name*) C. Date of Delivery 1/27/

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number (*Transfer from service label*) 7001 1140 0000 2590 8864

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-0835